# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

TRUDY BARNARD,            )    CASE NO. 1:17-cv-02575
                              )
      Plaintiff,          )
                              )
         v.             )    MAGISTRATE JUDGE DAVID A. RUIZ
                              )
NANCY A. BERRYHILL,      )
     *Acting Comm'r of Soc. Sec.*,  )    **MEMORANDUM OPINION AND ORDER**
                              )
      Defendant.      )

Plaintiff, Trudy Barnard (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 12). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. Procedural History

On July 1, 2014, Plaintiff filed her applications for POD and DIB, alleging a disability onset date of January 22, 2014. (Transcript ("Tr.") 190-196). The application was denied initially

and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 90-125). Plaintiff participated in the hearing on November 11, 2016, was represented by counsel, and testified. (Tr. 29-76). A vocational expert ("VE") also participated and testified. *Id*. On December 8, 2016, the ALJ found Plaintiff not disabled. (Tr. 22). On October 31, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-5). On December 12, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 15 & 17).

Plaintiff asserts the following assignments of error: (1) the ALJ erred in her analysis with respect to a Functional capacity Evaluation, and (2) the ALJ failed to properly analyze the opinion of a treating physician. (R. 15).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

##### a. Prior to the Alleged Onset date

On December 3, 2010, over three years before the alleged onset date, Philip G. Wilcox, M.D., performed lower back surgery on Plaintiff following the finding of a herniated disc at L5-S1. (Tr. 318). At a January 4, 2011 post-surgical visit, Dr. Wilcox found that Plaintiff was "doing better," noted her complaints of mild discomfort in her back and leg," and found that Plaintiff was ambulatory and her surgical incision was well-healed. *Id*. A follow up surgery in July of

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. It contains only a limited discussion of treatment records predating the alleged onset date.

2010 was performed to clean up the scar tissue. (Tr. 531). She underwent a fusion of L5-S1 on March 9, 2012. *Id*. On September 20, 2013, Plaintiff reported no relief from her earlier surgeries. *Id*.

On January 14, 2013, an MRI revealed mild degenerative disc disease and diffuse bulging at L2-L3, L3-L4, and L4-L5 with associated mild narrowing of the spinal canal; degenerative disc disease with diffuse bulging and post-operative changes at L5-S1; and, status post L5-S1 transpedicular fusion. (Tr. 658).

On January 22, 2013, Plaintiff began treatment with pain management specialist Tony G. Lababidi, D.O. (Tr. 334). Dr. Lababidi's examination of the lumbar spine was significant for limited ROM, positive Faber's and Gaeslen's sign on the right, SI joint tenderness on the right, and positive straight leg raise on the right. (Tr. 335). Dr. Lababidi assessed disorders of sacrum (primary), lumbar post laminectomy syndrome, lumbar/thoracic radiculopathy, and lumbago. *Id*. He prescribed Percocet and sacroiliac injections. (Tr. 336).

On June 28, 2013, Plaintiff was seen by Carrie A. Diulus, M.D., who noted Plaintiff presented with a "very compelling chronic pain story," "had multiple spine surgeries and subsequent stimulator trial and more injections that she can remember," all of which failed to offer her any relief. (Tr. 460). She has a "very hyper-inflated response to seated and lying [straight leg raise], with a negative contralateral [straight leg raise] and no compression of nerve roots on her imaging studies." *Id*. Dr. Diulus noted that a CT scan showed appropriate placement of her L5-Sl hardware. *Id*. A clear source for her ongoing pain could not be identified. *Id*. She discussed with Plaintiff participation in a chronic pain rehabilitation program (CPRP). *Id*.

On September 15, 2013, Plaintiff's neurosurgeon, Dane J. Donich, D.O., noted Plaintiff ambulated with a limp, had at least 4/5 strength, and mildly impaired ROM of the waist. (Tr.

633). She reported being no better than in the past and was in "obvious distress." *Id.* Dr. Donich noted there are "no other obvious further surgical indications." *Id.*

On September 20, 2013, Plaintiff saw Dr. Lababidi who noted severe pain in preparation for the Faber test positive straight leg raise test on the right, diminished sensation in the right dorsum, and radicular pain on the right. (Tr. 575). He noted Dr. Donich's opinion that Plaintiff was not a surgical candidate. (Tr. 576).

On December 6, 2013, less than two months before her alleged onset of disability, Plaintiff presented for a follow-up appointment following her discharge from a CPRP that had ended on November 23, 2013. (Tr. 536). Manu Mathews, M.D., documented that Plaintiff's reported pain level had decreased from 8/10 upon admission to 4/10 upon discharge from the CPRP. *Id.* Dr. Mathews also observed that Plaintiff's gait was within normal limits both at admission and discharge. *Id.* Her six-minute walking test had improved from 0.28 miles at admission to 0.43 miles at discharge. *Id.* Plaintiff reported to Dr. Matthews that her overall status had improved (Tr. 537).

### b. After the Alleged Onset Date

Plaintiff reported to James F. Sunbury, Ph. D., that her three-year job as a customer service manager had ended on January 24, 2014. (Tr. 696).

On July 7, 2014, Dr. Lababidi noted Plaintiff was in no acute distress and rose easily from a seated position. (Tr. 547). On examination, Plaintiff had mild pain to palpation of the lumbar spine, and positive SI joint tenderness on the right. (Tr. 548). She also had diminished sensation in the right dorsum and plantar foot and absent Achilles reflexes on the right. *Id.*

On August 6, 2014, Plaintiff, completed a function report for the Social Security Administration. (Tr. 258). She reported being unable to sit or stand for more than one to two

hours. (Tr. 258, Exh. 6E). She reported dusting, ironing washing dishes, watering plants, and doing the laundry with help carrying the basket, on a "daily/weekly" basis. (Tr. 260). She reported only being able to lift ten pounds, sit for 15 to 60 minutes, and walking only two miles due to pain. (Tr. 262).

On April 8, 2015, Plaintiff returned to Dr. Esterle. (Tr. 726-727). On examination, Plaintiff was able to ambulate without a limp or the use of a cane or walker. (Tr. 727). She had no degenerative changes or muscle wasting. *Id*.

On May 5, 2015, Plaintiff returned to the pain management clinic with complaints of back pain, and was seen by physician's assistant Stephanie Whitling. (Tr. 761). Ms. Whitling noted Plaintiff was in no acute distress and rose easily from a seated position. *Id*. On examination, she noted a "normal" lumbar spine inspection, but with tenderness to palpation in the paravertebral muscles, and mild ROM limitations. (Tr. 762). Again, she had diminished sensation in the right dorsum and plantar foot and absent Achilles reflexes on the right. *Id*. She observed that Plaintiff's pain was "well controlled on current medications, but activity still limited." (Tr. 763).

On May 22, 2015, Plaintiff returned to Dr. Esterle, seeking treatment for chronic back pain (Tr. 722). Dr. Esterle's examination found that Plaintiff was in no significant distress, that she could ambulate without a limp or use of a cane or walker, and had no muscle wasting. *Id*.

On September 21, 2015, Plaintiff saw Dr. Lababidi at the pain management clinic for low back pain and right leg pain. (Tr. 844). On examination, Plaintiff was in mild distress, rose from a seated position easily, had a "normal" spine inspection, tenderness in her paravertebral muscles, diminished sensation in her right foot, and mild limitations in range of motion in her lumbar spine. (Tr. 844-845). Dr. Lababidi observed that Plaintiff's pain was normally well controlled on her current medications, but that her activity was still limited. (Tr. 847). She

reported trying to walk more in order to lose weight but indicated walking caused more pain. *Id.*

On September 30, 2015, Plaintiff returned to the pain management clinic and was seen by Guang Yang, M.D. (Tr. 717). Plaintiff indicated that her pain was "normally well controlled on current medications," but that her activity was limited. (Tr. 719).

On February 12, 2016, Plaintiff followed up with Dr. Esterle reporting that she had gained sixty pounds in the last year due to inactivity caused by her chronic back pain. (Tr. 750). Dr. Esterle's examination found that Plaintiff was in no significant distress, she could ambulate without an assistive device, and there were no signs of degenerative changes or muscle wasting. (Tr. 750-751).

On May 31, 2016, Plaintiff returned to Dr. Esterle and informed her that her private long-term disability insurance company had terminated her benefits after concluding that she could perform light duty work. (Tr. 748). Dr. Esterle indicated she would do "whatever to try and help her out." *Id.* On examination, **Dr. Esterle chronic noted pain over her lower back, an ability to ambulate without a limp and without an assistive device, no degenerative changes, and no resent, and no muscle wasting. (Tr. 749).**

### 2. Opinions Concerning Plaintiff's Functional Limitations

On September 22, 2014, State Agency physician Eli Perencevich, D.O., opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, and stand/walk for 6 hours in an 8-hour workday. (Tr. 85-87). Further, Plaintiff could occasionally, climb ramps/stairs and crawl, but never climb ropes/ladders/scaffolds. (Tr. 85-86). Dr. Perencevich further asserted that Plaintiff could only occasionally reach overhead bilaterally. (Tr. 86). She would have to avoid all exposure to hazards and concentrated exposure to vibrations. (Tr. 87).

On March 19, 2015, State Agency physician James Cacchillo, D.O., assessed largely the same limitations and included only occasional use of right foot controls. (Tr. 98-101).

On March 31, 2015, Plaintiff underwent a functional capacity evaluation ("FCE") performed by Jeffrey D. House. (Tr. 928-940). Mr. House concluded that Plaintiff demonstrated the ability to function in the light exertional category, but noted that "[w]hile she did function within this category in terms of ability to perform the lifting/pushing/pulling task, she had a significant increase in pain" with increased antalgic gait and stiffness of movement. *Id*.

On May 21, 2015, physicians' assistant Stephanie Whitling, PA-C, completed physical and mental capacities evaluation forms. (Tr. 705-708). She indicated Plaintiff could sit and stand/walk for one hour each and lift/carry ten pounds occasionally (20 pounds occasionally but with pain) in an 8-hour workday. *Id*. She further opined that Plaintiff required a sit/stand at-will option throughout the day, as testing revealed that she could sit for 45 minutes before needing to change position. (Tr. 705). Ms. Whitling also completed a mental RFC assessment indicating Plaintiff would be markedly limited in her ability to complete a normal workday or work week without interruptions from psychologically based symptoms. (Tr. 707). There was no explanation concerning any of the functional limitations beyond a diagnoses of lumbar post laminectomy syndrome and lumbar radiculopathy.

On May 22, 2015, Dr. Esterle completed a one-page checklist Physical Capacities Evaluation that mirrored the earlier evaluation completed by Ms. Whitling. (Tr. 700). She indicated Plaintiff could sit and stand/walk for one hour each and lift/carry five pounds occasionally in an 8-hour workday. *Id*. She further opined that Plaintiff required a sit/stand at-will option throughout the day. *Id*. Dr. Esterle listed Plaintiff's diagnoses as lumbar post laminectomy syndrome and lumbar radiculopathy, but otherwise gave no explanation for the

assessed limitations. *Id*. Dr. Esterle also completed a mental RFC assessment indicating that Plaintiff would be markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; as well as complete a normal workday and workweek without interruption and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 701-702).

On December 30, 2015, Dr. Esterle opined that Plaintiff could not perform substantial gainful activity on a sustained basis (8 hours per day, 40 hours per week for 50 weeks per year). (Tr. 721). Dr. Esterle stated that Plaintiff had chronic back pain, had undergone several surgeries including a lumbar fusion, and concluded that Plaintiff "cannot sit/stand or lead a normal life due to her continued pain." *Id*.

On July 5, 2016, Dr. Esterle completed a medical source statement concerning Plaintiff's physical capacity wherein she opined that Plaintiff was limited to lifting/carrying less than ten pounds occasionally and frequently; standing/walking for less than one hour; and sitting for less than one hour in an 8-hour workday. (Tr. 861). The "medical findings" identified by Dr. Eberle as supporting her assessment for all three were that Plaintiff has "severe back pain." *Id*. She further opined that Plaintiff would need to be able to alternate positions between sitting, standing and walking at will, and that severe pain would interfere with Plaintiff's concentration, take her off task, and cause absenteeism. (Tr. 862). Finally, Dr. Esterle opined that Plaintiff would require additional breaks every hour. *Id*.

On February 12, 2016, Dr. Esterle completed a form indicating that Plaintiff would be unable to sit for more than 45 minutes, and unable to stand more than 30 to 45 minutes. (Tr. 889).

On February 23, 2016, Dr. Lababidi completed a form indicating that Plaintiff would be

limited to sitting for 45 minutes at a time; standing for 30-45 minutes at a time; and unable to drive longer than 15 to 20 minutes. He also noted that Plaintiff had tried and failed multiple injections, surgery, and a spinal cord stimulator trail. (Tr. 887).

On July 12 and 13, 2016, occupational therapist Leanne Kelly conducted a two-day FCE through Work Well Systems. (Tr. 867-878, 896-903). Her performance on the second day of testing was reported as "less than performance on the first day" with the second day being "more reflective of what the client is capable of repeating on a day to day basis" (Tr. 867). Ms. Kelly noted that bilateral upper and lower extremity strength within normal limits, good balance and bilateral upper extremity coordination, and good standing tolerance. (Tr. 892). However, she also had decreased sensation and ROM in the right lower extremity, decreased trunk ROM, an antalgic gait, and decreased ability to sit for more than a couple minutes, performing most sitting tasks while standing. *Id*. Ms. Kelly concluded that Plaintiff could perform standing work up to two-thirds of an 8-hour workday, and sit or walk for up to 33 percent of an 8-hour workday. (Tr. 895).

On October 25, 2016, Dr. Esterle wrote a letter to Plaintiff's counsel. (Tr. 925-926). Dr. Esterle stated that "[u]pon my examination of the patient, she is not able to sit for more than a few minutes without having to get up and move around. She is very uncomfortable. She has a lot of low back pain that radiates down into her legs. She really cannot lift or carry any weight over 5 pounds maximum. She also has significant limitations as far as bending, stooping, and lifting, at all. She is not able to do most of these things." (Tr. 925). Dr. Esterle concluded Plaintiff was not capable of a performing a "full time light duty job for what she was trained for in the past[,]" opining she could not sit, stand, lift, crouch and bend for "any significant period of time." (Tr. 926).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act (the "Act") through March 31, 2020.

2. The claimant has not engaged in substantial gainful activity since January 22, 2014, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairment: multi-level degenerative disc disease of the lumbar spine, status-post three remote surgeries, right lumbar radiculopathy, post-laminectomy syndrome and failed back syndrome [hereinafter, collectively, the "lumbar impairment"] (20 CFR 404.1520(c)).[2]

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant must be afforded the opportunity to change positions twice each hour, for a few minutes on each occasion; the claimant may occasionally operate foot controls with the right lower extremity; the claimant may frequently stoop, kneel, crouch, may occasionally crawl, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the claimant may occasionally reach overhead with the bilateral upper extremities; the claimant must avoid concentrated exposure to vibration and all exposure to workplace hazards, including moving mechanical parts and unprotected heights.

6. The claimant is capable of performing past relevant work as a sales and marketing manager (DOT#163.167-018), having a sedentary exertional level designation and a specific vocational preparation factor of eight, and business development manager (#189.117-014), having a sedentary exertional level designation and a specific vocational preparation factor of eight. This work does not require the performance of work-related

---

[2] The bracketed language is in the ALJ's decision.

activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from January 22, 2014, through the date of this decision (20 CFR 404.1520(1)).

(Tr. 13-21).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Weight Ascribed to a Functional Capacity Evaluation**

In the first assignment of error, Plaintiff asserts the ALJ failed to appropriately evaluate the results of a two-day functional capacity evaluation ("FCE") performed by an occupational therapist, Ms. Kelly, in July of 2016. (R. 15, PageID# 1031-1034).

According to social security regulations, an occupational therapist is not considered an acceptable medical source but rather an "other source" or a "nonmedical source." 20 C.F.R. § 1502 and § 404.1513. Pursuant to 20 C.F.R. § 404.1527(f)(2), an ALJ should "generally explain the weight given to opinions" from medical sources who are not "acceptable medical sources" as defined in the regulations or opinions from "nonmedical sources." Social Security Ruling ("SSR") 06-03p, notes that information from "other sources," in this case an occupational therapist, "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at * 2-3 (Aug. 9, 2006). A recent decision from within this district explained the ALJ's duties in connection with opinions from "other sources" as follows:

> In evaluating the opinions from "other sources," an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted); *see* SSR 06–03P. The ruling's explanation of the consideration to be afforded "other source" opinions provides:
>
> > Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or*

> *otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case.* In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

> SSR 06–03P, 2006 WL 2329939, at *6 (emphasis added).

Given this guidance, "it will rarely be enough for the commissioner to silently 'consider' the above-mentioned factors in deciding how much weight to give to an 'other source' who has seen the claimant in the source's professional capacity." *Estep v. Comm'r of Soc. Sec.*, Case No. 15cv10329, 2016 WL 1242360, at *3 (E.D. Mich. Mar. 30, 2016); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("An ALJ must consider other-source opinions and 'generally should explain the weight given to opinions for these 'other sources[.]'") (alteration in original) (quoting SSR 06–03P). Rather, "[t]he Sixth Circuit has repeatedly recognized that the commissioner must make an adequate record of the commissioner's consideration of an 'other source' who has seen the claimant in the source's professional capacity." *Estep*, 2016 WL 1242360, at *3 (collecting cases); *Hatfield v. Astrue*, No. 3:07–cv–242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (noting that "[t]he Sixth Circuit...appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight [given to an 'other source' opinions], as opposed to leaving the decision whether to explain to the ALJ's discretion") (citing *Cruse*, 502 F.3d at 541). **Still, "[s]o long as the ALJ addresses the opinion [from an 'other source'] and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations."** *Drain v. Comm'r of Soc. Sec.*, No. 14cv12036, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) (citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)).

*Hirko v. Colvin*, No. 1:15cv580, 2016 WL 4486852 at *3 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (emphasis added).

Here the ALJ clearly did not ignore the FCE performed by Ms. Kelly, nor did the ALJ consider them in silence. The ALJ provided the following explanation concerning the weight accorded to her opinion:

> Leanne Kelly, OTR conducted a functional capacity evaluation on July 12, 2016

14

and July 13, 2016, which indicated that the claimant could occasionally carry ten pounds, and occasionally lift five pounds, that she could occasionally work overhead, frequently stand, occasionally bend, never crouch, occasionally kneel, climb, walk and sit. Ms. Kelley conducted a two-day functional capacity evaluation and was reporting within the bounds of her professional certifications. However, she appears to have been unaware of the claimant's assessment as being deconditioned (7F/4), which would also contribute to decreased performance on the second day, and her report notes submaximal performance on multiple tasks, due to self-limiting behavior (18F/2), (25F/30). Less weight was accorded this opinion in consequence.

(Tr. 20).

Admittedly, the ALJ's explanation is brief. Nevertheless, it is sufficient under the applicable rulings and regulations. Plaintiff asserts the ALJ's reasoning is "flawed and relies on an inaccurate account of the evidence," and improperly "overrides [Ms. Kelly's] contemporaneous conclusion" with other evidence of record that Plaintiff portrays as "questionable." (R. 15, PageID# 1033). To the extent Plaintiff takes issue with the ALJ's interpretation of the evidence or suggests that the evidence should be construed differently, such an argument is tantamount to an invitation for this court to reweigh the evidence and to assign greater weight to Ms. Kelly's opinion. In other words, Plaintiff does not argue that the ALJ failed to *explain* why she gave less weight to Ms. Kelly's opinion, but is rather arguing that the reasons given are not good reasons as they involve an interpretation of the record with which she disagrees.

This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and*

*recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). "When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case *de novo*, resolve conflicts in evidence, or *decide questions of credibility*." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (*quoting Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Because the explanation requirement for considering "other source" opinions is not the equivalent of the treating physician rule, which is applicable only to *acceptable medical sources*, the court finds no deficiency with the level of explanation the ALJ provided regarding Ms. Kelly's opinion. Plaintiff's objection to the ALJ's explanation does not provide a basis for remand, nor will the court expand the explanation requirement to the more rigorous treating physician standard. *See, e.g., Moscorelli v. Colvin*, No. 1:15cv1509, 2016 WL 4486851 at **3-4 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (observing that a thin explanation that would not constitute a good reason for discounting a treating source's opinion may, nevertheless, satisfy the explanation requirement for a non-treating source). While a claimant may disagree with the ALJ's explanation as to why little weight was assigned to an "other source," such a disagreement with the ALJ's rationale does not provide a basis for remand.

Therefore, Plaintiff's first assignment of error to be without merit.

**2. Weight Ascribed to Dr. Esterle**

In the second assignment of error, Plaintiff asserts that the ALJ erred by violating the treating physician rule with respect to the weight assigned to her treating physician—Dr. Esterle. (R. 15, PageID# 1035-1039). The Commissioner notes that Dr. Esterle saw Plaintiff only four times during the relevant time period, and argues the ALJ gave good reasons for assigning little weight to her opinions. (R. 17, PageID# 1061-1064).

"Provided that they are based on sufficient medical data, 'the medical opinions and

diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb

to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed Dr. Esterle's opinions as follows:

> The claimant's primary care physician, Lisa Esterle, D.O., offered multiple opinions of physical function. On May 22, 2015, she indicated that the claimant would need to sit or stand at will, could sit for one of eight hours and stand and/or walk for one of eight hours, could not lift more than five pounds, could never stoop or crouch. On December 30, 2015, she indicated that the claimant could not work full-time. On July 5, 2016, she offered limitations more restrictive than those offered on May 22, 2015. On February 16, 2016, she indicated that the claimant could do less than sedentary work and could not work for even two hours per day. On October 25, 2016, she indicated that the claimant could not perform light duty work, and that the claimant could not sit, stand, lift, crouch, or bend. Dr. Esterle has claimed a treatment "arc" stretching back to 2009 (13F/1), yet the treatment records supplied begin in the spring of 2015, consistent with a treatment note dated April 2015 that refers to the claimant getting "established" with Dr. Esterle (15F/6). Dr. Esterle's treatment notes generally reflect a treatment relationship involving vitamin D deficiency and hypothyroidism only. Dr. Esterle's clinical findings consistently report a normal gait, normal sensory and motor examinations (15F/3), (16F/2). Dr. Esterle's most recent opinion offers as the basis for her limitations the "statements" and "reports" of the claimant (24F/4-5), which suggests that Dr.

Esterle has surrendered her professional judgment to that of the claimant's subjective opinions. Dr. Esterle's opinions are not consistent with the overall evidence of record, discussed in digest form in the analysis of Drs. Perencevich and Cacchillo, above. One of Dr. Esterle's opinions are among those proscribed by SSR 96-5p. For all of these reasons, no controlling weight, rather, little weight was accorded any of these opinions.

(Tr. 19).

First, the ALJ observed that Plaintiff's treatment relationship with Dr. Esterle involved primarily treatment for vitamin D deficiency and hypothyroidism. *Id*. This appears to be a rather roundabout way of expressing that Dr. Esterle was not a pain management specialist and not in charge of managing Plaintiff's pain symptoms, which the record reveals was performed by pain management specialists. Specialization is one of the factors to be considered in evaluating opinion evidence. 20 C.F.R. § 404.1527(c)(5). As recounted above and as pointed out by the ALJ, Dr. Esterle's objective examinations consistently report a normal gait, as well as normal sensory and motor examinations. Further, the ALJ found that Dr. Esterle's opinions were not consistent with the overall evidence of record, pointing to the decision's earlier discussion when addressing the opinions of Drs. Perencevich and Cacchillo. (Tr. 19). The ALJ also noted the following:

> [T]he overall evidence of record, which contains multiple imaging studies reporting no compressive spinal pathology and a single, only potentially adverse finding on electrodiagnostic studies (8F/7), clinical examinations showing the claimant to be neurologically intact (15F/3), (16F/2), a treatment regimen restricted to medications only [though remote records show attempts at nearly all known forms of treatment][3] and an array of activities of daily living of sufficient breadth to encompass light household chores, performance of typical errands and short driving trips, provision of childcare for her granddaughter, socialization with friends, and pursuit of hobbies (6E), (12F/5).

(Tr. 18). Further, reading the opinion as a whole, the ALJ also noted Plaintiff's ability to

---

[3] Bracketed text is in the ALJ's decision.

ambulate two miles at a time (Tr. 15, *citing* Tr. 262, Exh. 6E), a steadily diminishing prescription

regimen (Tr. 16), and noted the lack of clear source for Plaintiff's pain. (Tr. 17, *citing* Tr. 532,

Exh. 7F).

Finally, the ALJ found that Dr. Esterle's most recent opinion from October 25, 2016, is

based largely on Plaintiff's subjective statements, "which suggests that Dr. Esterle has

surrendered her professional judgment to that of the claimant's subjective opinions." (Tr. 19,

*citing* Tr. 925-926). Indeed, Dr. Esterle's opinion includes numerous references to limitations

that were plainly based on Plaintiff's self-reports (*i.e.* her reported limitations driving, her

inability to use a standing desk at work, and so forth) (Tr. 925-926). Furthermore, it bears noting

that the doctor's May 2015 evaluation is a checklist form containing no explanation for the

assessed limitations (Tr. 700); the December 2015 statement consists of two sentences that say

little more than Plaintiff cannot work due to pain; and the July of 2016 statement merely

identifies "severe back pain" as the basis for her assessments.[4] (Tr. 861) Thus, the ALJ's

conclusion that Dr. Esterle's opinions are based on Plaintiff's self-reports of pain is not an

unreasonable interpretation of the evidence of record. Other courts have held that "[w]hen a

treating physician's opinion is based on a claimant's self reports which are themselves not

credible, it is not error to assign little weight to the opinion." *Webb v. Comm'r of Soc. Sec.*, No.

2:13-CV-19, 2014 WL 129237, at *6 (E.D. Tenn. Jan. 14, 2014) (citing *Vorholt v. Comm'r of

Soc. Sec.*, 409 Fed. Appx. 883, 889 (6th Cir. 2011) (finding no issue with the ALJ's rejection of a

---

[4] "Supportability" is one of the factors specifically set forth in the regulations used to evaluate
opinion evidence, and states that "[t]he more a medical source presents relevant evidence to
support an opinion, particularly medical signs and laboratory findings, the more weight we will
give that opinion. The better an explanation a source provides for an opinion, the more weight
we will give that opinion." 20 C.F.R. §§ 404.1527(c)(3).

physician's opinion that was based on the claimant's false reports)); *accord Lockhart v. Colvin*, No. 5:14-CV-00852, 2015 WL 1505767, at *6 (N.D. Ohio Apr. 1, 2015) (White, M.J.) (same); *Griffith v. Comm'r of Soc. Sec.*, 582 Fed. App'x 555, 564 (6th Cir. 2014) ("the ALJ is not required to simply accept the testimony of a medical examiner based solely on the claimant's self-reports of symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence."); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (affirming ALJ's rejection of treating physician opinions where "[t]hese doctors formed their opinions solely from Smith's reporting of her symptoms and her conditions and the ALJ found that Smith was not credible"); *Stevenson v. Astrue*, 2010 WL 3034018 at * 8 (M.D. Tenn. Aug.3, 2010) (finding that a medical opinion "based on [an] incredible self-report could reasonably be given insignificant weight by an ALJ when the credibility determination is based on substantial evidence").

While Plaintiff had multiple surgeries prior to the alleged onset date, the ALJ's determination—that objective evidence does not support Dr. Esterle's assessment—is not thereby rendered unreasonable or unsupportable. Even if there is some evidence of record that supports a treating source's conclusion, that alone does not render the ALJ's decision to reject a treating opinion untenable. *See, e.g., Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 440 (6th Cir. 2017.) "The fact that there is some evidence in the medical records to support [a treating source's] conclusion is not enough to overturn the agency. 'The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant.'" *Id.* (citations omitted). With respect to both assignments of error, although a different interpretation of the record could conceivably support a determination to grant disability benefits, a reviewing court is

not permitted to "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Here, while there is evidence that Plaintiff has medical conditions that can cause pain, there is sufficient evidence to support the ALJ's conclusion that her pain is not as severe as alleged. Because the ALJ set forth sufficient reasons for affording little weight to the FCE and Dr. Esterle's opinions, she properly afforded them little weight.

### IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: March 18, 2019